[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 29, 2010
JOHN LEY
CLERK

No. 09-11238
_____

D. C. Docket No. 07-00258-CV-FTM-99-SPC

MID-CONTINENT CASUALTY COMPANY,

                                        Plaintiff-
                                        Counter-Defendant-
                                        Appellee,

                    versus

AMERICAN PRIDE BUILDING COMPANY, LLC,
a Florida limited liability company,
AMERICAN PRIDE BUILDING CO., LLC,
a Florida limited liability company,
AMERICAN PRIDE BUILDER, LLC,
a Florida limited liability company,
GROFF CONSTRUCTION, INC.,
a Florida corporation,

                                        Defendants-
                                        Counter-Claimants-
                                        Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 29, 2010)

Before DUBINA, Chief Judge, FAY, Circuit Judge, and ALBRITTON,[*] District Judge.

FAY, Circuit Judge:

This appeal arises out of a dispute between an insurance company and its insured regarding the insurer's duty to indemnify the insured for the settlement of an underlying litigation. Mid-Continent Casualty Company ("Mid-Continent") sued American Pride Building Company, LLC[1] ("American Pride") for declaratory judgment that it is not obligated to defend or indemnify American Pride against a copyright infringement claim by Groff Construction, Inc. ("Groff"). Mid-Continent asserts that it has no duty to defend or indemnify American Pride because the underlying complaint does not allege an injury covered under the policy. Mid-Continent also asserts that it has no duty to indemnify because American Pride violated the terms of the insurance policy in settling the underlying action without Mid-Continent's participation and consent. American Pride maintains that it properly rejected Mid-Continent's conditional defense, thus was free to settle the lawsuit in any way it chose. The district court denied summary judgment to Mid-Continent on its policy coverage claim and granted summary

---

[*]Honorable William H. Albritton III, United States District Judge for the Middle District of Alabama, sitting by designation.

[1]The named defendants in this action also include American Pride Building Co., LLC and American Pride Builder, LLC. It appears that these entities are merely alternate names for American Pride Building Company, LLC; thus, we refer to a single "American Pride" defendant.

2

judgment on its lack of cooperation claim. The district court held that "[a]lthough Mid-Continent had a duty to defend American Pride in the underlying litigation, American Pride's breach of the terms of the policy means that Mid-Continent is not required to indemnify American Pride for the settlement of the underlying litigation." Finding genuine issues of material facts, we reverse and remand.

## I. BACKGROUND

*A. Factual Background*

American Pride was a homebuilder in the Fort Myers, Florida area. Mid-Continent, a commercial underwriter, issued general liability insurance policies to American Pride for the period December 30, 2003 through December 30, 2006. These substantively identical annual policies provided coverage up to $1 million for personal and advertising injury. American Pride is now out of business.

In January 2006, Groff, another homebuilder in Florida, brought a lawsuit against American Pride, and others, in federal district court alleging copyright infringement and unfair competition. Specifically, Groff alleged that American Pride and the other named defendants printed flyers for homes built by American Pride, which infringed Groff's copyright in two home designs. Groff's complaint alleged that American Pride "willfully and knowingly" copied Groff's designs for financial gain with the intent to damage Groff. Groff sought damages in the form of injunctive relief, disgorgement of profits, costs and attorney's fees, among

3

others.

American Pride informed Mid-Continent about the lawsuit and Mid-Continent initially refused to provide a defense citing possible coverage issues. Mid-Continent's February 2006 letter informed American Pride that "[a]t this time, we will not hire an attorney to defend you in this matter" and that it was "reserving all of its rights regarding coverage in connection with this matter" including the "right to institute . . . an action to have the rights of the parties hereto determined." Several months later, Mid-Continent informed American Pride that it had "decided to provide a defense to American Pride at this time" under a reservation of rights and assigned the matter to an attorney. Six months later, Mid-Continent sent American Pride a third reservation of rights letter providing additional grounds for possibly denying coverage. Nevertheless, Mid-Continent continued to provide American Pride with a defense and American Pride continued to cooperate fully in that defense.

Notably, none of Mid-Continent's reservation of rights letters advised American Pride that it had the right to reject Mid-Continent's conditional defense or that if it accepted the conditional defense, it could not later reject that defense. Furthermore, none of Mid-Continent's letters informed American Pride that they may have to reimburse Mid-Continent for attorney fees or costs expended.

In February 2007, the parties in the underlying litigation engaged in court-

4

ordered mediation. In his post-mediation report to Mid-Continent, Joseph Lowicky, the attorney hired by Mid-Continent to defend American Pride, noted that American Pride had a "limited chance" of succeeding in its liability defense and recommended a settlement value of $550,000. Lowicky advised American Pride and Mid-Continent that liability was certain and damages could exceed $10 million. Lowicky acknowledged that under the lost profits theory, Groff's damages ranged from $795,000 to $1,380,000 plus attorney fees and costs, and under the statutory damage theory, Groff could recover as much as $150,000 for each of the 51 to 76 infringing homes. As such, Lowicky advised American Pride and Mid-Continent that "under either Plaintiff's lost profits theory or a statutory award, the judgment likely to be entered in this matter . . . will likely vastly exceed what it could now be settled for." Despite Lowicky's evaluation that actual damages could exceed the $1 million maximum coverage, Mid-Continent refused to authorize settlement for more than $75,000.

In early April, 2007, after the matter was mediated to an impasse, American Pride retained independent counsel and demanded that Mid-Continent withdraw its reservation of rights within ten days or American Pride would reject Mid-Continent's conditional defense. A week later, Mid-Continent responded that "once American Pride accepted the defense, it cannot reject it under Florida law." Mid-Continent also warned that "[i]f American Pride rejects the defense and settles

this case without Mid-Continent's consent, it will be Mid-Continent's position that American Pride has breached its duties under the policy."

On Tuesday, April 17, 2007, Groff sent American Pride a proposed Stipulation for Entry of Consent Judgment and Consent Judgment. Groff's accompanying letter stated that "we have attached the documents for your preliminary review and comments" and stated their desire "to wrap up this case by the end of this week . . . ." Later that day, American Pride's attorney, Mark Yeslow, replied to Groff explaining that there was a legal issue as to whether an insured who has accepted a defense under a reservation of rights could then reject the defense and settle.

Despite the strained relationship between Mid-Continent and American Pride, the parties continued to negotiate a settlement. On Friday, April 20, 2007, Lowicky informed Mid-Continent that he had "conveyed the increased settlement offer of $100,000 to [Groff]'s counsel" and "that [Groff] now demands $250,000.00 and that this is a 'take it or leave it' offer." In the same communication, Lowicky advised Mid-Continent that "[i]t is my understanding based upon conversations with [Groff]'s counsel and Mark Yeslow . . . that if this matter is not settled for the $250,000.00 demand, [American Pride] . . . will effectively 'fire' my firm and reject Mid-Continent's continuing coverage under its reservation of rights" and enter into a settlement agreement with Groff in excess of

6

$1 million.

On Wednesday, April 25, 2007, Mid-Continent informed American Pride that it did not intend to increase its offer of $100,000 prior to Groff's close of business deadline. During his deposition, Lowicky testified that "[Mid-Continent] had coverage issues and that is why they could only put $100,000 on it." Mid-Continent never explained the basis for its actions to American Pride. That same day Mid-Continent filed the instant lawsuit, seeking declaratory judgment that it is not obligated to defend or indemnify American Pride. The lawsuit also contends that American Pride is liable to pay Mid-Continent's attorney fees and costs. The next day, after obtaining a copy of the declaratory action, American Pride notified Mid-Continent that it was "respectfully rejecting any continued defense under a reservation of rights."

On May 3, 2007, American Pride and Groff entered into a Coblentz agreement[2] for $1.7 million. The signed agreement, which is essentially the same as the April 17 proposals, except for the added settlement figure of $1.7 million, provided that Groff would not seek to recover against American Pride and assigned American Pride's rights under the policies to Groff.

*B. Procedural Background*

[2]*Coblentz v. American Surety Co. of New York*, involves an agreement for entry of a consent judgment against an insured in situations where the insurer declines to defend or offers to defend under a reservation of rights. 416 F.2d 1059 (5th Cir. 1969). In return for a stipulated judgment, the claimant agrees not to execute against the insured. *Id.*

Mid-Continent's original complaint, filed April 25, 2007, asserts that Mid-Continent has no duty to defend or indemnify American Pride against Groff's claims for copyright infringement and unfair competition. In June 2007, Mid-Continent amended its complaint to also assert that Mid-Continent has no duty to indemnify American Pride against the consent judgment in the underlying lawsuit. American Pride answered Mid-Continent's amended complaint and asserted a counterclaim for indemnification.

Mid-Continent filed two motions for summary judgment arguing that it has no duty to defend or indemnify American Pride in the underlying litigation. Mid-Continent's first motion for summary judgment contends that Groff's complaint does not allege an injury covered under the policy. Mid-Continent's second motion for summary judgment asserts that American Pride breached its duty to cooperate under the terms of the policies.

In February 2009, the district court denied Mid-Continent's Motion for Summary Judgment on its policy coverage claim and granted its Motion for Summary Judgment on its lack of cooperation claim. The district court's ruling on the policy coverage claim is not before us in this appeal. On the lack of cooperation claim, the district court held that although Mid-Continent had a duty to defend American Pride under the terms of the insurance policy, "American Pride's actions in secretly negotiating and entering into a settlement agreement without the

8

consent of Mid-Continent, prior to American Pride rejecting Mid-Continent's conditional defense, constituted a breach of American Pride's duty of cooperation and relieved Mid-Continent of the duty to indemnify American Pride for the settlement." In reaching its conclusion, the district court found that American Pride could properly reject the conditional defense and settle the case because Mid-Continent materially changed the terms of the defense by seeking attorney fees and costs. However, the district court determined that "American Pride settled the underlying litigation on April 17," nine days before rejecting Mid-Continent's conditional defense. Based on this factual determination, the district court concluded that American Pride breached the policy's cooperation clause relieving Mid-Continent of its duty to indemnify. American Pride appeals the district court's grant of summary judgment to Mid-Continent.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, viewing all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. *See S. Solvents, Inc. v. N.H. Ins. Co.*, 91 F.3d 102, 104 (11th Cir. 1996). Under Fed. R. Civ. P. 56(c), a motion for summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

9

entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

## III. DISCUSSION

We begin by noting that this declaratory judgment action was brought on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Thus, state law applies to any issue not governed by the Constitution or treaties of the United States or Acts of Congress. *See* 28 U.S.C. § 1652; *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938). The district court implicitly determined that Florida law controls Mid-Continent's legal duties and obligations under its insurance policies and accordingly, applied Florida law throughout the dispositions below. The parties have not objected; thus, we examine the various claims asserted on appeal under Florida law.[3] *See Cavic v. Grand Bahama Dev. Co., Ltd.*, 701 F.2d 879, 882 (11th Cir. 1983) ("Because the parties did not raise any conflict of laws issue in the district court and do not raise it on appeal, under applicable conflict of laws principles the law of the forum ( [Florida] ) would govern the substantive issues due to the absence of facts justifying the application of the law of some other jurisdiction." (internal quotation marks omitted)).

*A. Insurer's Duty to Defend*

---

[3]Although it has no precedential authority, we find this Court's discussion in *Continental Casualty Co. v. City of Jacksonville*, of an insurer's duty to defend and an insured's duty to cooperate under Florida law, persuasive and borrow substantially from that unpublished opinion. 283 Fed. Appx. 686 (11th Cir. 2008) (per curium).

Under Florida law, "an insurer's duty to defend is separate and distinct from its duty to indemnify" and "is determined solely by the allegations of the complaint." *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*, 695 So. 2d 475, 476 (Fla. 3d DCA 1997). "Thus, an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy." *Id.* Under these circumstances, an insurer may reserve its right to challenge coverage under the policy without breaching its duty to defend by providing a defense under a reservation of rights. *See id.* at 477. Such a conditional defense "resolves the urgent question of who shall defend and postpones resolution of the contingent question of who shall pay any judgment." *Taylor v. Safeco Ins. Co.*, 361 So. 2d 743, 745 (Fla. 1st DCA 978).

While an insurer must defend its insured, and may tender its defense subject to a reservation of rights, Florida law does not require an insured to accept such a defense. "It is well-settled law that, when an insurer agrees to defend under a reservation of rights or refuses to defend, the insurer transfers to the insured the power to conduct its own defense . . . ." *BellSouth Telecomm., Inc. v. Church & Tower of Fla., Inc.*, 930 So. 2d 668, 670-71 (Fla. 3d DCA 2006); *see also Nationwide Mut. Fire Ins. Co. v. Beville*, 825 So. 2d 999, 1003 (Fla. 4th DCA 2002) (explaining that when an insurer either refuses to defend or makes a reservation of rights, it violates its duty to unconditionally defend its insured and

11

thereby transfers to the insured the power to defend). As the Florida First District Court of Appeal explained in *Taylor*:

> Just as the insurer is not required to abandon its contest of a duty to pay as a condition of fulfilling an assumed or admitted duty to defend, the insured is not required to abandon control of his own defense as the price of preserving his claim, disputed by the insurer, that the insurer pay any judgment.

361 So. 2d at 745. In *Taylor*, "[the insurer's] reservation of its assertion of nonliability, though privileged, relinquished to [the insured], at his election, control of the litigation." *Id.* at 746. Thus, "if the insurer offers to defend under a reservation of rights, the insured has the right to reject the defense and hire its own attorneys and control the defense." *BellSouth*, 930 So. 2d at 671.

In the instant case, Mid-Continent tendered a defense subject to a full reservation of rights and American Pride accepted that defense allowing Mid-Continent to defend the action for almost a year. As required by its duty to defend, Mid-Continent hired an attorney and paid all attorney fees and costs associated with defending the Groff litigation. While it is undisputed that Mid-Continent provided American Pride with the basic requirements of a defense, it is less clear whether Mid-Continent acted in good faith in that defense. Nevertheless, by accepting and not rejecting Mid-Continent's fully-funded defense, American Pride was required to cooperate with Mid-Continent throughout the Groff litigation.

*B. Insured's Duty to Cooperate*

12

The insurance contracts between Mid-Continent and American Pride outline American Pride's "Duties In The Event Of Occurrence, Offense, Claim Or Suit." Those duties include immediately notifying Mid-Continent of any demands and "cooperat[ing] with [Mid-Continent] in the . . . settlement of the claim or defense . . . ." In addition, the policies provide that "[n]o insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense . . . without [Mid-Continent's] consent."

Florida law has long established that "an insurer may deny coverage and avoid payment of compensation to the victim of the insured's tort where the insured has been guilty of lack of cooperation . . . ." *Ramos v. Nw. Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla. 1976). However, "[n]ot every failure to cooperate will release the insurance company. Only that failure which constitutes a material breach and substantially prejudices the rights of the insurer in defense of the cause will release the insurer of its obligation to pay." *Id.* While the question of "whether the failure to cooperate is so substantially prejudicial as to release the insurance company of its obligation is ordinarily a question of fact . . . under some circumstances, particularly where the facts are admitted, it may well be a question of law." *Id.* Furthermore, an insurer may only avoid its obligation to pay "where the insurer has exercised diligence and good faith in seeking to bring about the cooperation of the insured, and where the insurer has in good faith complied with the terms and

13

conditions of the policy." *Id.*

Mid-Continent argues that it has no duty to indemnify because American Pride violated the terms of the insurance policy in settling the underlying action without Mid-Continent's participation and consent. American Pride insists that it did not violate the policy's cooperation clause and only settled with Groff after properly rejecting Mid-Continent's conditional defense based upon changed terms and conditions. Additionally, American Pride argues that Mid-Continent did not seek to foster American Pride's cooperation and did not fulfill its own contractual obligations.

The district court correctly held that "an insured may reject a conditional defense after the initial offering if the insurer changes the terms of the conditional defense in a material way." Nevertheless, the district court determined that "American Pride has failed to show that it rejected the defense after Mid-Continent changed the terms of the defense agreement in a material way, and therefore has failed to establish that it properly rejected Mid-Continent's defense." The district court appears to base this conclusion on the fact that American Pride told Mid-Continent that it would reject its defense if it did not withdraw its reservation of rights within ten days. However, we find record evidence to suggest that American Pride actually rejected Mid-Continent's conditional defense the day after Mid-Continent filed its declaratory judgment action informing American Pride that it

14

intended to seek attorney fees and costs.  If believed, this evidence could be found to establish that American Pride properly rejected Mid-Continent's defense under the reservation of rights based upon these changed terms and conditions.  Of course, if American Pride properly rejected Mid-Continent's defense it was free to enter into a settlement.  Under this scenario, American Pride violated the policy's cooperation clause only if it secretly negotiated a settlement prior to rejecting Mid-Continent's defense.

The district court held that even if "American Pride rejected Mid-Continent's defense because of the attorney's fees issue, the evidence shows that American Pride settled the underlying litigation on April 17, but did not reject the defense until April 26."  The district court's conclusion appears to rely on its previous assertion that "on April 17, 2007, American Pride and Groff had agreed in principle to a settlement" and that "American Pride did not inform Mid-Continent about this agreement."  While American Pride and Groff may have agreed in principle to a settlement, there is evidence that could support a finding that settlement was not consummated until after American Pride rejected Mid-Continent's conditional defense.  Groff sent American Pride a proposed settlement agreement and stated that "we have attached the documents for your preliminary review and comments."  This language indicates that Groff did not expect or intend this to be the final settlement agreement.  American Pride's only response to Groff

15

regarding the proposed agreement was a concerned email from Mark Yeslow explaining that "the key issue will be when you accept defense under a reservation of rights can the insured then reject the defense and settle?" This email contemplates the legal issues surrounding a future rejection of Mid-Continent's defense and subsequent settlement and raises legitimate concerns about whether or not a settlement could be completed. It also appears that even Mid-Continent recognized, in its motion for summary judgment, that American Pride did not settle with Groff until May 3, 2007.[4] Thus, it is clear that there is a genuine issue concerning when this settlement was finalized.

In addition, the district court's conclusion that "American Pride did not inform Mid-Continent about this agreement" is contradicted by the evidence. Lowicky's April 20 email informed Mid-Continent that it was his "understanding based upon conversations with [Groff]'s counsel and Mark Yeslow . . . that if this matter was not settled for the $250,000.00 demand," American Pride would reject Mid-Continent's conditional defense, "then negotiate a judgment significantly higher than $250,000.00, probably in excess of $1,000,000.00, with an agreement that [Groff] will not seek to collect any portion of that judgment against individuals associated with American Pride" and that "as part of any such settlement, the

---

[4]"Despite [Mid-Continent]'s objection to the unauthorized settlement, on May 3, 2007, American Pride entered into a consent judgment with Groff for $1.7 million . . . ."

16

American Pride defendants will also assign their rights under Mid-Continent's policy to [Groff], and [Groff] will then seek to collect the negotiated judgment directly against Mid-Continent." This was more than mere speculation. Lowicky confirmed in his deposition testimony that he had learned of the proposed consent judgment in his conversations with American Pride and Groff and had reported that information to Mid-Continent. There was nothing secret about the intended resolution by American Pride and Groff and Mid-Continent was made fully aware of this plan.

Summary judgment is proper only when there are no genuine issues of material fact. Viewing the evidence and any justifiable inferences in American Pride's favor, a reasonable person could conclude that American Pride informed Mid-Continent of the proposed settlement agreement and that American Pride did not settle the underlying litigation until after it properly rejected Mid-Continent's conditional defense. Consequently, the district court's reasoning in this regard is insufficient to sustain summary judgment. Finding these genuine issues of material fact, that must be resolved by a jury, we reverse the district court's grant of summary judgment to Mid-Continent.

## IV. CONCLUSION

For the foregoing reasons, we reverse the district court's grant of summary judgment to Mid-Continent based on lack of cooperation and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.