[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11639
_____

D.C. Docket No. 3:12-cv-00890-MMH-PDB


HUGH A. CARITHERS, Individual,
KATHERINE S. CARITHERS, Individual,

Plaintiffs - Appellees,

versus

MID-CONTINENT CASUALTY COMPANY,
a corporation,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 7, 2015)

Before ED CARNES, Chief Judge, COX, Circuit Judge, and ROYAL,[*] District
Judge.

---

[*] Honorable C. Ashley Royal, United States District Judge for the Middle District of Georgia,
sitting by designation.

COX, Circuit Judge:

This is an insurance dispute, in a diversity case, arising out of defects in the construction of a house for the Plaintiffs, Hugh and Katherine Carithers ("the Carithers"). Florida law applies. The policy at issue is a post-1986 commercial general liability policy with products-completed operations coverage issued to general contractor Cronk Duch Miller & Associates, Inc. ("Cronk Duch"). Cronk Duch assigned the rights under the policy to the Carithers. We address a number of coverage issues related to damage to a completed project caused by the defective work of sub-contractors. We affirm in part and reverse in part.

## I.    Facts and Procedural History

After discovering a number of defects in their home, the Carithers filed suit against their homebuilder, Cronk Duch, in state court ("the underlying action"). Cronk Duch's insurance company, Mid-Continent Casualty Company ("Mid-Continent"), refused to defend the action on behalf of Cronk Duch. The Carithers and Cronk Duch then entered into a consent judgment in the underlying action for approximately $90,000, in favor of the Carithers. The consent judgment also assigned to the Carithers Cronk Duch's right to collect the judgment amount from Mid-Continent. The Carithers then filed this action against Mid-Continent in state court to collect from Mid-Continent on the settlement. Mid-Continent removed the

2

case to the Middle District of Florida.  The Carithers are the Plaintiffs in this action due to Cronk Duch's assignment of its rights to them.

Mid-Continent issued four insurance policies to Cronk Duch.  The first policy provided coverage from March 9, 2005, to March 9, 2006, the second from March 9, 2006, to March 9, 2007, the third from March 9, 2007, to March 9, 2008, and the fourth from March 9, 2008 to October 6, 2008.  The policies read, in relevant part,[1]

> SECTION 1 – COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages . . . .
>    b. This insurance applies to "bodily injury" and "property damage" only if . . . .
>       (2) The "bodily injury" or "property damage" occurs during the policy period . . . .
> 2. Exclusions
>    This insurance does not apply to . . . .
>       j. Damage To Property
>          "Property damage" to . . . .
>          (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of these operations; or

---

[1] Mid-Continent contends that the relevant provisions are the same in each policy.  Because the district court determined that the March 9, 2005, to March 9, 2006, policy applies, and we agree with this determination, we quote only this policy.

3

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it . . . .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard" . . . .

l.  Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor . . . .

SECTION V – DEFINITIONS . . . .

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions . . . .

17. "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it . . . .

This insurance does not apply to:

1.  "Bodily injury", "property damage", "personal or advertising injury" or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any fungus, mildew, mold or resulting allergens . . . .

(Insurance Policy # 1, DE 69-4 at 16–29, 42).

The parties filed cross-motions for summary judgment on the issue of Mid-Continent's duty to defend Cronk Duch in the underlying action. The complaint in the underlying action alleged that the defects could not have been discovered until 2010. Since Mid-Continent had only agreed to insure Cronk Duch until 2008, Mid-Continent argued, it was not liable for damages that could not have been discovered by reasonable inspection before 2010. On the duty to defend issue, the

district court granted summary judgment for the Carithers and denied summary judgment for Mid-Continent. In reaching this conclusion, the district court held that the proper "trigger" for determining if property damage "occurred" during the policy period is the date of the actual damage. The district court rejected Mid-Continent's argument that property damage occurs when it is discovered, or, alternatively, when it could be discovered by reasonable inspection.

The coverage issue was decided following a bench trial. During the trial, the Carithers's expert testified that the damage to the Carithers's garage was the product of wood rot. This expert also testified that wood rot is usually caused by fungus. After this, Mid-Continent asked for leave to amend its answer to assert a defense based on an exclusion in the policy for damage caused by fungus and mold. The district judge denied the motion, holding that Mid-Continent had impermissibly delayed in raising this issue and that an amendment was not permissible under Fla. Stat. § 627.426(2)(a), which, according to the district court, requires thirty days written notice if an insurer is going to deny coverage based on a coverage defense.

Following trial, the court found that the damage occurred in 2005, and, therefore, that the 2005–2006 policy applied. Next, applying the 2005–2006 policy, the court concluded that the policy's coverage for "property damage" does not include the defective work of a sub-contractor, but does include damage to

5

other property caused by the defective work of a sub-contractor.  Based on this conclusion, the court determined: (1) that a faulty electrical system caused property damage to the electrical appliances; (2) that the incorrect application of exterior brick coating caused property damage to the brick; (3) that the use of inadequate adhesive and an inadequate base in the installation of tile caused property damage to the tile; and (4) that the incorrect construction of a balcony, which allowed water to seep into the ceilings and walls of the garage leading to wood rot, caused property damage to the garage.

The court concluded that Mid-Continent was liable for all of the damages awarded in the state court judgment.  This included the cost of repairing the balcony itself, which, the district judge determined, had to be replaced in order to repair the property damage to the garage.  In other words, though the balcony was not property damage (because it was the defective work of a sub-contractor), the balcony was part of the cost of repairing the garage, which was property damage. Similarly, the damage award included the cost of replacing the defective mud base, apparently because it needed to be replaced in order to replace the tiles, though the district court made no such finding.[2]

II.    **Contentions on Appeal**

---

[2] The district court did not expressly award damages for the mud base.  But the parties agree, based on the amount of damages, that the district court awarded these damages.

6

Mid-Continent presents three contentions on this appeal. First, Mid-Continent contends that it was entitled to summary judgment on the issue of the duty to defend Cronk Duch in the underlying action. And, Mid-Continent contends, if there was no duty to defend, there is no duty to indemnify Cronk Duch for the damages awarded in the underlying action. Second, Mid-Continent contends that the court erred by refusing to grant it leave to amend its answer to include a coverage defense based on the fungus and mold exclusion in the policy. Third, Mid-Continent contends that the court improperly awarded damages for the brick, the tiles, the mud base, and the balcony.[3]

## III.    Standard of Review

We review de novo the grant of summary judgment and the denial of summary judgment.[4] *Cagle v. Bruner*, 112 F.3d 1510, 1514 (11th Cir. 1997). We review a district court's denial of a motion for leave to amend the pleadings at trial for abuse of discretion. *Borden, Inc. v. Florida E. Coast Ry. Co.*, 772 F.2d 750, 758 (11th Cir. 1985). Following a bench trial, we review legal conclusions de novo

---

[3] Mid-Continent does not challenge the part of the district court's damages calculation that was based on damage to the Carithers's electrical appliances caused by the defectively installed electrical system. For that reason, we will not address those particular damages in this opinion beyond noting that the district court's judgment on that point stands.

[4] The parties dispute whether we should review the duty to defend issue as determined at the summary judgment stage, or whether we should review the duty to defend issue based on the facts established at trial. But, as discussed below, whether there was a duty to defend in this case is determined based on the allegations in the complaint in the underlying action.

7

and findings of fact for clear error. *Mitchell v. Hillsborough Cnty.*, 468 F.3d 1276, 1282 (11th Cir. 2006).

## IV.    Discussion

### a.  Summary Judgment on the Duty to Defend

We determine whether Mid-Continent had a duty to defend Cronk Duch in the underlying action using only the allegations in the Carithers's complaint in the underlying action. *Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 442-43 (Fla. 2005).

Mid-Continent contends that this issue turns on what the proper trigger is for determining whether property damage "occurs" during the policy period. Mid-Continent contends that property damage occurs when it manifests itself. The parties call this the "manifestation" trigger. Mid-Continent presents two versions of the manifestation trigger: (1) that damage occurs when it is discoverable by reasonable inspection; or (2) that damage occurs when it is actually discovered. The Carithers contend that property damage occurs when the property is damaged. The parties call this the "injury-in-fact" trigger.

The complaint in the underlying action alleged that the damages could not have been discovered by reasonable inspection until 2010. There was no policy in effect, however, after 2008. Thus, Mid-Continent contends, if we apply the manifestation trigger, there was no duty to defend Cronk Duch in the underlying

action because the property damage that gave rise to the underlying action did not occur during any of the four policy periods. Mid-Continent does not assert any other basis for refusing to defend Cronk Duch in the underlying action. The Carithers respond in two ways. First, as discussed above, they argue that the manifestation trigger is not the proper trigger. Second, they argue that, even if the manifestation trigger applies, there was a duty to defend in the underlying action.

We hold that there was a duty to defend in the underlying action. An insurance company's duty to defend is broader than its duty to indemnify. *See MacLeod v. School Bd. of Seminole Cnty*. 457 So.2d 511, 511 (Fla. 5th DCA 1984). And, "[a]ll doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured." *Grissom v. Commercial Union Ins. Co.*, 610 So.2d 1299, 1307 (Fla. 1st DCA 1992). In short, Mid-Continent was required to offer a defense in the underlying action unless it was certain that there was no coverage for the damages sought by the Carithers in the action.

Mid-Continent admits that "no Florida state court appellate decision" has decided which trigger applies to determining when property damage occurs in these circumstances. (Br. for Appellant at 15). And, Mid-Continent admits that the issue has split federal district courts in Florida. (*Id.*). Basically, Mid-Continent is

asking this court to make new law deciding which trigger applies, and, thereby, retroactively justify its refusal to offer a defense to Cronk Duch.

Even if we were to agree with Mid-Continent as to what the appropriate trigger is for determining when property damage occurs, it would not follow that it was entitled to refuse to offer Cronk Duch a defense. An insurance company must defend an action where the facts alleged against the insured would give rise to coverage, even if those facts are not ultimately proven at trial. We consider this situation analogous. Given the uncertainty in the law at the time, Mid-Continent did not know whether there would be coverage for the damages sought in the underlying action because Florida courts had not decided which trigger applies. Mid-Continent was required to resolve this uncertainty in favor of the insured and offer a defense to Cronk Duch. *See Mid-Continent Cas. Co. v. Am. Pride Bldg. Co.*, 601 F.3d 1143, 1149 (11th Cir. 2010) ("'Thus, an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy.'") (quoting *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co.*, 695 So. 2d 475, 476 (Fla. 3d DCA 1997)).

For this reason, we hold that the district court did not err in finding that Mid-Continent had a duty to defend Cronk Duch in the underlying action.

### b. The Appropriate Trigger for Determining Coverage

10

Although we need not decide which trigger applies for purposes of determining whether there was a duty to defend, this issue is material to whether there is coverage for the damages awarded.

As discussed above, the parties disagree about what it means for property damage to occur during the policy period, and thus trigger coverage. The district court held, and the Carithers contend, that the proper trigger is the injury-in-fact trigger. Applying this trigger, the only inquiry is when the property was damaged. If the date of actual damage was during the policy period, then that policy applies. Mid-Continent contends that we should apply the manifestation trigger, which (depending on which version of the test you apply) asks (1) when the damage was reasonably discoverable, or (2) when the damage was actually discovered.

The policy at issue applies to property damage that "occurs during the policy period." The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Though cited by neither party, this court considered a similar policy, under Florida law, in *Trizec Properties, Inc. v. Biltmore Construction Co., Inc.*, 767 F.2d 810 (11th Cir. 1985).[5] In *Trizec*, the policy defined an "occurrence," in relevant part, as "an accident, including continuous or repeated exposure to conditions,

---

[5] While the issues raised in *Trizec* related to the insurance company's duty to defend, rather than its duty to indemnify, the question presented both in *Trizec* and in this case is the meaning of the word "occurrence." While we "express[ed] no opinion" in *Trizec* whether the insurance company was "liable under the policy," this was due to the existence of factual disputes. 767 F.2d at 813.

11

which results in bodily injury or property damage . . . ." *Id.* at 812.   The policy

language is almost identical in this case.   The *Trizec* court considered the same

issue:

> [The insurance company] contends that since the complaint alleges
> that the damage did not "manifest" itself until 1979, and because its
> coverage ceased on January 1, 1976, it has no duty to defend [the]
> lawsuit.  It asserts that the occurrence of the damage can only trigger
> coverage where it is discovered or has "manifested" itself.
>
> We believe that [the insurance company] owes [the insured] a duty to
> defend [the] lawsuit. The language of the policy itself belies [the
> insurance company's] assertions.   The potential for coverage is
> triggered when an "occurrence" results in "property damage."   There
> is no requirement that the damages "manifest" themselves during the
> policy period.  Rather, it is the damage itself which must occur during
> the policy period for coverage to be effective.

*Id.* at 813.

We agree with the analysis in *Trizec*.   The plain language of the policy does

not support Mid-Continent's reading.   Property damage occurs when the damage

happens, not when the damage is discovered or discoverable.

We note the difficulty that may arise, in cases such as this one, where the

property damage is latent, and is discovered much later.   We also note that the

district court found as a fact in this case that the property was damaged in 2005.

For this reason, we limit our holding to the facts of this case, and express no

opinion on what the trigger should be where it is difficult (or impossible) to

12

determine when the property was damaged. We only hold that the district court did not err in applying the injury-in-fact trigger in this case.

### c. Denial of Motion to Amend the Pleadings

The district court denied Mid-Continent's motion for leave to amend its pleadings at trial to assert a coverage defense based on the fungus and mold exclusion in the policy. Mid-Continent contends that the district court erred in relying on Fla. Stat. § 627.426(2)(a) as the basis for denying the motion. According to Mid-Continent, this statute does not apply to denials of coverage based on express policy exclusions, such as the fungus and mold exclusion at issue here. The Carithers do not appear to dispute that Fla. Stat. § 627.426(2)(a) was not a proper basis for denying the motion. They contend, instead, that disallowing this last minute amendment was not an abuse of discretion under the circumstances.

The district court's entire discussion of this issue is found in a footnote in its Memorandum and Order:

> One of Plaintiffs' witnesses, Brett Douglas [Newkirk], testified that the wood rot in Plaintiffs' garage developed because the water incursion allowed microscopic "critters" such as fungi to grow in the wood. (Tr. at 113.) Mid-Continent then argued that the Policy would exclude coverage for damage to the garage because the Policy contains a "Fungus, Mildew and Mold Exclusion." (Policy at ML 12 17 (04 01).) But Mid-Continent has been aware since the inception of this matter that the damage to the garage was caused by wood rot, which is by definition "decomposition from the action of bacteria or fungi." Definition of verb "rot," www.merriam-webster.com/dictionary/rot (last visited March 3, 2014). Mid-Continent cannot now rely on an exclusion that it has never before

13

mentioned in this litigation. See Fla. Stat. § 627.426(2)(a) (prohibiting insurer from denying coverage based on a coverage defense unless insurer gives written notice to insured within 30 days after insurer knew or should have known of the coverage defense).

(Mem. and Order, DE 126 at 6–7 n.2). We read the district court's opinion as denying the motion to amend for two reasons. First, the court discussed what can be characterized as unreasonable delay. The court stated that Mid-Continent had been aware of wood rot "*since the inception* of this matter" and that "Mid-Continent cannot now rely on an exclusion that it has *never* before mentioned in this litigation. (*Id.*) (emphasis added). Second, the district court determined that the amendment was precluded by Fla. Stat. § 627.426(2)(a).

We hold that the court did not abuse its discretion in denying the amendment based on Mid-Continent's unreasonable delay. We need not decide whether the court's reliance on Fla. Stat. § 627.426(2)(a) was error. Mid-Continent raised this issue for the first time at the close of the Carithers's case, after the Carithers had finished presenting evidence. (Trial Tr. 1, DE 124 at 141). Long before he testified at trial, the Carithers's expert had attested in an affidavit that "[d]ecay of wood components is the result of *decay-fungi* which consume the wood and are sustained by repeated wettings." (Aff. of Brett Newkirk, DE 21-2 at ¶ 9) (emphasis added). The Carithers filed the expert's affidavit containing that statement more than a year before the trial as a document in support of their motion for summary judgment. We agree with the district court that Mid-Continent was on notice of this issue

14

since the inception of the case, and find no abuse of discretion in the district court's denial of the motion to amend its pleadings based on Mid-Continent's unreasonable delay.

### d. Property Damage Determinations

The district court awarded damages for damages to the brick, the tiles, the mud base, and the balcony. Mid-Continent contends that the brick, the tile, the mud base, and the balcony were not properly considered property damage under the policy. For this reason, Mid-Continent contends that the district court erred in awarding damages for these items. The Carithers contend that the brick was properly considered property damage. The Carithers also contend that the tile was properly considered property damage. As for the balcony, they contend that, though not property damage itself, the replacement of the balcony was necessary to effect repairs to the garage. Similarly, they contend that the replacement of the mud base was necessary to effect repairs to the tile.

The parties agree that the Supreme Court of Florida's two decisions, *United States Fire Insurance Co. v. J.S.U.B., Inc.*, 979 So.2d 871 (Fla. 2007), and *Auto-Owners Insurance Co. v. Pozzi Window Co.*, 984 So.2d 1241 (Fla. 2008), govern this case. Neither party contends that the insurance policies in these two cases contain materially different policy language.

15

According to these cases, "faulty workmanship or defective work that has damaged the otherwise nondefective completed project has caused 'physical injury to tangible property' within the plain meaning of the definition in the policy." *J.S.U.B.*, 984 So.2d at 889. However, "there is a difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage.'" *Id.* (citations omitted). And, these cases only apply this rule to the work of sub-contractors. *See, e.g.*, *id.* at 890 ("Even if a 'moral hazard' argument could be made regarding the contractor's own work, the argument is not applicable for the subcontractors' work."). Finally, where a homeowner purchases tangible property—such as a window—which is defectively installed by a sub-contractor, the damage to that tangible property caused by the defective installation constitutes property damage. *Pozzi Window*, 984 So.2d at 1249 ("[B]ecause the windows were purchased separately by the Homeowner, were not themselves defective, and were damaged as a result of the faulty installation, then there is physical injury to tangible property . . . .").

This court interpreted these cases in *Amerisure Mutual Insurance Co. v. Auchter Co.*, 673 F.3d 1294 (11th Cir. 2012), which is binding precedent in this court. *See United States v. Chubbuck*, 252 F.3d 1300, 1305 n.7 (11th Cir. 2001) (the prior precedent rule applies to interpretations of state law). In *Auchter*, a sub-

16

contractor negligently installed tiles on a roof and the result of this negligent installation was that the entire roof needed to be replaced.  673 F.3d at 1307.  The plaintiff argued that the defective installation of tiles caused property damage to the roof.  *Id.*  The court rejected this argument, holding that the defective work in this case was the entire roof, not just the tiles. *Id.* at 1308.  In other words, because a single sub-contractor built the roof, the roof was the relevant component for distinguishing between defective work and damage caused by defective work. *Id.* And, since the sub-contractor's defective work (the roof) did not cause damage to any other property, there was no property damage.

The *Auchter* court interpreted *Pozzi Window* narrowly.  It distinguished between a window, which is composed of many components, and roofing tiles, which are merely one component that goes into creating a roof. *Id.* at 1308 n.20. Thus, unlike in *Pozzi Window*, it was irrelevant whether the plaintiff had separately purchased the roofing tiles. *Id.*  It only mattered that the sub-contractor's negligent work on the roof did not damage any property other than the roof. *Id.*

We apply this framework to the property damage awards challenged by Mid-Continent.

### i.  The Brick

The district court determined that the negligent application of exterior brick coating caused property damage to the brick itself.  This issue turns on whether the

brick installation and the application of the brick coating were done by a single sub-contractor. If it was done by a single sub-contractor, then the damage to the bricks was part of the sub-contractor's work, and this defective work caused no damage apart from the defective work itself. However, if the bricks were installed by one sub-contractor, and a different sub-contractor applied the brick coating, then the damage to the bricks caused by the negligent application of the brick coating was not part of the sub-contractor's defective work, and constituted property damage.

At oral argument, Carithers's counsel conceded that there was no evidence presented on whether the brick coating was applied by the sub-contractor who installed the bricks, or a different sub-contractor. Thus, we must decide who had the burden of proof on this issue.

The general rule under Florida law is that "once the insured establishes a loss apparently within the terms of the policy, the burden is upon the insurer to prove that the loss arose from a cause which is excepted." *Phoenix Ins. Co. v. Branch*, 234 So.2d 396, 398 (Fla. 4th DCA 1970). We conclude that proof that the damaged property was the work of a separate sub-contractor is part of the insured's initial burden of bringing the loss within the terms of the policy. As the Supreme Court of Florida has noted, "there is a difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,'

18

and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage' . . . ." *J.S.U.B.,* 979 So.2d at 889 (citations omitted). We hold that distinguishing defective work from the damage caused by defective work is necessary to establish "a loss apparently within the terms of the policy."

As discussed, Carithers's counsel admitted that the Carithers had presented no evidence establishing that the brick installation and the application of the brick coating were performed by different sub-contractors. The Carithers failed to meet their burden of proof on this issue. As noted previously, if it was done by a single sub-contractor, then the damage to the bricks was part of the sub-contractor's work, and this defective work caused no damage apart from the defective work itself. For this reason, we reverse the district court's award of damages for property damage to the bricks.

ii.  The Tile and the Mud Base

The district court determined that the use of inadequate adhesive and an inadequate base in the installation of tile caused property damage to the tile. The damage award included the cost of replacing both the tile and the mud base itself. The district court found as a fact that this tile was purchased by the Carithers. (Mem. and Order, DE 126 at 7). Mid-Continent does not contend that this factual finding was clearly erroneous. Instead, Mid-Continent contends that the tile itself

was part of the defective work of the sub-contractor.  The Carithers respond that, since they separately purchased the tile, the Supreme Court of Florida's decision in *Pozzi Window* justifies the award.

While a broad reading of *Pozzi Window* may support this award, such a reading is foreclosed by our decision in *Auchter*.  As discussed above, the court in *Auchter* held that there is no coverage for a defective installation where there is no damage beyond the defective work of a single sub-contractor. *Auchter*, 673 F.3d at 1308.  And, unlike the windows in *Pozzi Window*, it is immaterial whether the homeowner separately purchased the tile. *Id.* at 1308 n.20.  Thus, as with the brick, this issue turns on whether the installation of the mud base and the installation of the tile were performed by the same sub-contractor.

We have reviewed the evidence cited by the parties and find that there is no evidence from which a reasonable fact-finder could conclude that the tile and the mud base were installed by different sub-contractors.  As with the brick, we conclude that the Carithers failed to meet their burden of proof on this issue.  As noted previously, if the mud base and the tile were done by a single sub-contractor, then the damage to the tile was part of the sub-contractor's work, and this defective work caused no damage apart from the defective work itself.  For this reason, we reverse the district court's award of damages for the tile and the mud base.

20

### iii.  The Balcony

The district court found that the balcony was defectively constructed, which caused damage to the garage.  The district court also recognized that, under Florida law, the defectively constructed balcony was not covered by the policy.  However, the district court found as a fact that, in order to repair the garage (which the parties agree constituted property damage), the balcony had to be rebuilt.  Mid-Continent does not contend that this factual finding was clearly erroneous.  Rather, Mid-Continent contends that the Carithers cannot recover for any defective work, even where repairing that work is a necessary cost of repairing work for which there is coverage.

We hold that the district court did not err in awarding damages for the cost of repairing the balcony.  Under Florida law, the Carithers had a right to "the costs of repairing damage caused by the defective work . . . ." *J.S.U.B*, 979 So.2d at 889.  Since the district court determined that repairing the balcony was part of the cost of repairing the garage, which was defective work, the Carithers were entitled to these damages.

## V.    Conclusion

For the foregoing reasons, we reverse the district court's award of damages for the brick, the tiles, and the mud base, affirm the judgment of the district court

21

in all other respects, and remand for a new determination of damages to be awarded.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.