[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11366

Non-Argument Calendar

_____

SOUTHERN-OWNERS INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellant,

*versus*

MAC CONTRACTORS OF FLORIDA, LLC,
d.b.a. KJIMS Construction,

Defendant-Counter Claimant-Appellee,

PAUL S. DOPPELT,
Trustee of Paul S. Doppelt
Revocable Trust dated 12/08/90,
DEBORAH A. DOPPELT,
Trustee of Deborah A. Doppelt

Revocable Trust dated 12/08/90,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:18-cv-00021-JES-KCD

_____

Before ROSENBAUM, BRANCH, and ABUDU, Circuit Judges.

PER CURIAM:

This is the third appeal in an insurance dispute arising from the abandoned construction of a custom-built home in Marco Island, Florida. Southern-Owners Insurance Company seeks a declaration that it owed no duty to defend its insured, MAC Contractors of Florida, LLC, doing business as KJIMS Construction, against a since-resolved lawsuit for breach of contract brought by the property owners after KJIMS abandoned the job site and left the work unfinished and damaged.[1]

---

[1] According to the district court, the state-court lawsuit was dismissed in September 2019 under a settlement agreement for $70,000. KJIMS has withdrawn its claim for indemnification of the settlement amount, leaving only the issue of the duty to defend.

In the prior two appeals, we rejected Southern-Owners' arguments that it had no duty to defend KJIMS from the property owners. We held that coverage was not entirely excluded by a "Your Work" exclusion, *Southern-Owners Ins. Co. v. MAC Contractors of Fla., LLC ("KJIMS I")*, 768 F. App'x 970, 973 (11th Cir. 2019), and that the complaint could be fairly construed to allege "property damage" within the meaning of the commercial liability policy, *Southern-Owners Ins. Co. v. MAC Contractors of Fla., LLC ("KJIMS II")*, 819 F. App'x 877, 883 (11th Cir. 2020).

On remand, the district court considered two additional policy exclusions, j(6) and j(7), and concluded that they did not eliminate coverage. Accordingly, the court granted KJIMS' motion for summary judgment and declared that Southern-Owners had a duty to defend KJIMS in the underlying state court lawsuit. Southern-Owners appeals, arguing that it had no duty to defend because all of the damages alleged in the underlying lawsuit were entirely within the scope of exclusions j(6) and (7) and the Your Work exclusion, considered cumulatively.

We review *de novo* the grant of summary judgment and the interpretation of contract language. *Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1163–64 (11th Cir. 2017). Because this is a diversity action, we apply the substantive law of the forum state, which is Florida. *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148 (11th Cir. 2010). We may affirm on any ground supported by the record. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012).

An insurer's duty to defend arises where the underlying allegations "fairly bring the case within the scope of coverage." *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35–36 (Fla. 4th DCA 2003). "If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit." *Trizec Props., Inc. v. Biltmore Constr. Co., Inc.*, 767 F.2d 810, 811–12 (11th Cir. 1985). Any doubt about whether the insurer owes a duty to defend must be resolved against the insurer and in favor of the insured. *Id.* at 812. So when there is "uncertainty in the law at the time" about the insurer's duty to defend, the insurer is "required to resolve this uncertainty in favor of the insured and offer a defense." *Carithers v. Mid Continent Cas. Co.*, 782 F.3d 1240, 1246 (11th Cir. 2015).

"[E]xclusionary clauses are construed more strictly than coverage clauses." *Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co.*, 76 So. 3d 20, 23 (Fla. 1st DCA 2011). But if the complaint clearly shows "the applicability of a policy exclusion, the insurer has no duty to defend." *Keen v. Fla. Sheriffs' Self-Insurance Fund*, 962 So. 2d 1021, 1024 (Fla. 4th DCA 2007). The insurer bears the heavy burden of showing "that the allegations of the complaint are cast solely and entirely within the policy exclusion and are subject to no other reasonable interpretation." *Castillo v. State Farm Fla. Ins. Co.*, 971 So. 2d 820, 824 (Fla. 3d DCA 2007).

The CGL policies at issue provided coverage for damages due to "property damage" caused by an "occurrence." Under a "Your Work" exclusion, the policies did not cover "property

damage" to the insured's "work" that had been "completed or abandoned." Exclusions j(6) and j(7) also excluded coverage for property damage to the following:

> (6) That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

> (7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Exclusions j(6) and j(7) in the subject policy are identical to exclusions j(5) and j(6) in the standard CGL coverage form, respectively. For consistency with the case law, we'll use the latter, standard numbering to describe the Particular Part exclusions.

In the first appeal, we agreed with KJIMS that the Your Work exclusion did not cover property damage that occurred during ongoing operations, and that the underlying allegations could reasonably be construed to allege damages that occurred before abandonment—that is, during ongoing operations. *KJIMS I*, 768 F. App'x at 973. We also held, in the second appeal, that the allegations could be construed to allege that "one subcontractor damaged nondefective work performed by another subcontractor," creating a potential for coverage for "property damage" beyond "the defective work itself." *KJIMS II*, 819 F. App'x at 882; *see Carithers*, 782 F.3d at 1250 (holding that "property damage" under Florida law requires "damage beyond the defective work of a single sub-contractor").

6                    Opinion of the Court                    23-11366

Southern-Owners does not challenge these rulings, which it concedes are law of the case.[2]

Instead, Southern-Owners maintains that the Particular Part exclusions, specifically exclusion j(5), operate to exclude coverage for any property damage caused by KJIMS or its subcontractors during ongoing operations. And because the Your Work exclusion excludes damages occurring once operations ceased, according to Southern-Owners, "all damages alleged in the [underlying lawsuit]—no matter when they occurred—are cast solely and entirely within these exclusions cumulatively."

The parties offer competing views of the scope of the Particular Part exclusions. Southern-Owners advocates a broad interpretation, under which "that particular part" is defined by reference to the scope of the insured's project. Because KJIMS was the general contractor, Southern-Owners contends, these exclusions bar coverage for any property damage at the project site caused by KJIMS or its subcontractors. KJIMS proposes a narrower view, emphasizing the limiting nature of the phrase "that particular part." That restrictive language, according to KJIMS, means that the exclusions bar coverage for damages only for the distinct part or unit of the project being worked on, rather than the entire scope of a contractor's work.

---

[2] *See Culpepper v. Irwin Mortg. Corp.*, 491 F.3d 1260, 1271 (11th Cir. 2007) ("The law-of-the-case doctrine holds that subsequent courts will be bound by the findings of fact and conclusions of law made by the court of appeals in a prior appeal of the same case.") (quotation marks omitted).

23-11366               Opinion of the Court                    7

In support of its broader interpretation, Southern-Owners primarily relies on our decision in *Travelers Indemnity Co. of Connecticut v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255 (11th Cir. 2021). In *Mckenzie & Sons*, we examined exclusion j(5) in the context of damages caused by the manager of citrus groves. *Id.* at 1262. Applying Florida law, we defined "particular part of real property" in the exclusion as "the property on which [the insured] was performing operations." *Id.* at 1263. And we defined the manager's "operations" by reference to the duties specified in the work contract. *Id.* Because the damage happened to the citrus groves on which the manager was performing those operations, and arose out of those operations, we found that the Particular Part exclusion applied to bar coverage. *Id.* Southern-Owners contends that this case presents the "same situation" as *Mckenzie & Sons*, since KJIMS, like the citrus manager, was responsible for all operations at the property where the damages occurred.

Even assuming *Mckenzie & Sons* is on point, though, "it would not follow that [Southern-Owners] was entitled to refuse to offer [KJIMS] a defense." *Carithers*, 782 F.3d at 1246. That's because "an insurer is obligated to defend a claim even if it is uncertain whether coverage exists under the policy," and even if it ultimately prevails on the issue of coverage. *Id.* *Mckenzie & Sons* was decided in August 2021, nearly two years after the underlying lawsuit settled. So it does not speak directly to the state of the "law at the time" of the underlying lawsuit or "retroactively justify [the] refusal to offer a defense." *Id.*

Here, at the time of the underlying lawsuit, there was uncertainty in the law about the scope of exclusions j(5) and j(6). *See Carithers*, 782 F.3d at 1246. Southern-Owners has not identified any Florida appellate or Supreme Court decision that had defined the phrase "that particular part" or applied it in materially similar circumstances as this case. And Florida district courts, applying Florida law, had adopted differing views of the scope of Particular Part exclusions.[3] Beyond Florida, other circuit courts had adopted views consistent with the narrower interpretation.[4] The narrower view was also supported by the body that drafted the Particular Part

---

[3] *Compare Bradfield v. Mid-Continent Cas. Co.*, 143 F. Supp. 3d 1215, 1243 (M.D. Fla. 2015) ("Where an insured is a builder of homes, as is the case here, the entire house is considered the product of the builder. Thus, the [Particular Part] exclusions serve to deny coverage when the insured builder or its subcontractor has caused any damage to the home itself.") (quotation marks omitted), *with Essex Ins. Co. v. Kart Constr., Inc.*, No. 8:14-cv-356, 2015 WL 4730540, at *4–5 (M.D. Fla. Aug. 10, 2015) (adopting the narrower view that "the dispositive issue" for exclusion j(5) "is the 'operations' that [the insured] performed at the moment of the accident, not the tasks that the contract explicitly contemplates"). Both *Bradfield* and *Kart* relied heavily on *American Equity Ins. Co. v. Van Ginhoven*, 788 So. 2d 388 (Fla. 5th DCA 2001).

[4] *See Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 311 (6th Cir. 2010) (stating the words "that particular part" are "trebly restrictive," making clear that the exclusion applies only to "the distinct component parts of a building" on which work was being performed, "and not to the building generally"); *Mid-Continent Cas. Co. v. JHP Development, Inc.*, 557 F.3d 207, 217 (5th Cir. 2009) (reasoning that exclusion j(6) did not apply because "[t]he exterior finishes and retaining walls were distinct component parts that were each the subject of separate construction processes and are severable from the interior drywall, stud framing, electrical wiring, and wood flooring").

exclusions.  *See* INSURANCE SERVICES OFFICE, INC., ISO CIRCULAR GENERAL LIABILITY GL 79-12 (Jan. 29, 1979).[5]

Southern-Owners does not dispute that it had a duty to defend under the narrow interpretation of Particular Part exclusions advocated by KJIMS and its supporting cases.  And it has not attempted to discredit that interpretation apart from citing *Mckenzie & Sons*, which was decided well after the underlying lawsuit settled.  Accordingly, given the uncertainty about the scope of exclusions j(5) and j(6) at the time, Southern-Owners has not shown that the damages were "solely and entirely within the policy exclusion[s]." *Castillo*, 971 So. 2d at 824.  Accordingly, consistent with our prior decisions in these cases, we hold that Southern-Owners had a duty to defend the underlying lawsuit.  *See Trizec Props.*, 767 F.2d at 811–12; *Tippett*, 864 So. 2d at 35–36.

For these reasons, we affirm the district court's judgment.

**AFFIRMED.**

---

[5] To illustrate the application of exclusion j(5), the ISO offered the following example:

> [A] general contractor engages a steel erection contractor to erect steel beams for a building.  After erecting several beams, the subcontractor negligently swings another beam against the erected beams causing damage to all the beams.  The damage to the beams already in place would be covered.  The damage to the swinging beams would be excluded . . . .