PAVARINI CONSTRUCTION CO. (SE) INC., a Delaware Corporation, individually, and for the use and benefit of Steadfast Insurance Company, a Delaware Corporation, Plaintiff,

v.

ACE AMERICAN INSURANCE COMPANY, a Pennsylvania Corporation, Defendant.

CASE NO. 14–CV–20524–KING

United States District Court, S.D. Florida.

Signed October 29, 2015

Entered October 30, 2015

David T. Dekker, Laura A. Freid-Studlo, Melissa C. Lesmes, Stephen Scott Asay, Pillsbury Withrop Shaw Pittman LLP, Washington, DC, Russell Marc Landy, Peter Francis Valori, Damian & Valori LLP, Miami, FL, for Plaintiff.

Joel D. Adler, Marlow Adler Abrams Newman & Lewis, Maritza Pena, Marlow Connell Abrams Adler Newman & Lewis, Coral Gables, FL, for Defendant.

*AMENDED ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

JAMES LAWRENCE KING, UNITED STATES DISTRICT JUDGE, SOUTHERN DISTRICT OF FLORIDA

**THIS MATTER** comes before the Court upon cross-motions for summary Judgment (DE 128), filed July 13, 2015. The motions are fully briefed.

## I. INTRODUCTION

Plaintiff Pavarini Construction Co. was the general contractor for construction of 900 Biscayne Bay Condominium, a 63–floor, 516–unit condominium ("the Project"). *See* DE 131 at ¶¶ 1–2. The project was insured by three relevant insurance policies: (1) the commercial general liability ("CGL") policy issued by American Home Assurance Company ("American Home"); (2) the CGL policy issued by Defendant ACE American Insurance Company ("ACE"); and (3) the Subguard policy issued by Steadfast Insurance Company ("Steadfast"). *See id.* at ¶¶ 20–24.

The American Home and ACE CGL policies are part of an Owner Controlled Insurance Program ("OCIP") made up of a set of CGL policies designed to provide insurance coverage for the project owner, Terra–Adi International Bayshore, LLC, ("Project Owner"), Plaintiff Pavarini and certain of Plaintiff's subcontractors with uniform insurance coverage for claims of property damage and bodily injury. *See id.* at ¶¶ 17–22. Separately, the Subguard policy with Steadfast ("Steadfast policy") provides coverage to Plaintiff Pavarini Construction Co. as general contractor for risk of subcontractor contractual default. *See id.* at ¶¶ 24, 26.

The American Home policy contains a $2 million per occurrence limit and a $4 million aggregate limit. *See id.* at ¶ 20. ACE's policy has a $25 million per occurrence limit and $25 million aggregate limit. *See id.* at ¶ 22. The ACE CGL policy is excess over the American Home CGL policy. *See id.* The Steadfast policy contains a $25 million aggregate limit. *See id.* at ¶ 79. The Steadfast policy's $25 million aggregate limit applies not just to the 900 Biscayne Bay Condominium but to all covered projects. *See* DE 131 at ¶ 5; DE 131–2 at 105, 110–11, 115. The American Home policy, ACE policy, and Steadfast policy contain "Other Insurance" provi-

sions providing that the insurance is excess over any other insurance available. See DE 123 at 23, 102.

Plaintiff Pavarini hired subcontractor Alan W. Smith, Inc. ("AWS") for the installation of concrete masonry unit ("CMU") walls and certain reinforcing steel. See DE 131 at ¶ 12. Plaintiff hired subcontractor TCOE Corporation ("TCOE") for the supply and installation of reinforcing steel within the cast-in-place concrete columns, beams, and shear walls. See id. at ¶ 13. AWS and TCOE were covered by the American Home and ACE policies. See DE 110 at 6; DE 128 at 7. The work performed by both subcontractors was so seriously deficient. A significant amount of reinforcing steel was either omitted entirely or improperly installed throughout the building, including placement within its critical concrete structural elements, causing destabilization. See DE 110 at 2; DE 131 at ¶ 48.

The building's compromised structural support system resulted in excessive movement of building components. See DE 131 at ¶¶ 50–51. This, in turn, caused stucco debonding and cracking on the walls of the building, worsening cracking of cast-in-place concrete elements (columns, beams, and shear walls), and cracking in the mechanical penthouse enclosure on the roof, which led to water intrusion. See id.

In December of 2010, upon becoming aware of the deficiency, the Project Owner served Plaintiff with a formal demand to repair all damage. See id. at ¶ 46. Both AWS and Plaintiff sought indemnification through the American Home and ACE policies. See id. at ¶¶ 64–69. American Home and ACE initially refused coverage.[1]

See id. at ¶ 69. AWS was contractually obligated to indemnify Plaintiff for the cost of repairing damage caused by its defective work. See id. at ¶ 68. In order to meet its indemnification obligation, AWS looked to the American Home and ACE policies for funding. See id. Refusal of coverage by American Home and ACE contributed to the contractual default of AWS, which then allowed Plaintiff to receive coverage through the Steadfast policy. See id. at ¶¶ 69–70.

On October 5, 2011, Plaintiff and Steadfast entered into a Payment Agreement, whereby Steadfast agreed to advance funds to Plaintiff for approved costs on an ongoing basis. See id. at ¶ 75. In return, Plaintiff promised to continue to pursue claims against American Home and ACE and to repay Steadfast with any recovery. See id. Through repayment, Plaintiff reduces the amount for which Steadfast can seek recovery. See id. at ¶ 95.

Costs incurred by Plaintiff as part of its remediation efforts include amounts paid to: consultants to investigate the damage and design a plan of remediation, install hurricane netting to prevent bodily injury and additional property damage, install a structural steel exoskeleton and a metal panel façade (the "Panel System") to provide the required structural support in the absence of functional steel beams, and repair the mechanical penthouse enclosure on the roof. See id. at ¶¶ 57, 91. The parties do not dispute that Plaintiff incurred $25,121,474.84 in costs relating to the remediation effort. See DE 135 at 1–3. After accounting for $2 million recovered from the American Home policy and related salvage efforts, Plaintiff seeks a total of $23,116,798.44 in damages. See DE 131 at ¶ 100.

---

1. In December 2012, American Home acknowledged coverage.

While the amount is undisputed, the parties dispute the nature and character of the loss. *See* DE 135 at 1–3. Plaintiff claims that none of the costs include the repair of defective work itself; rather all repairs were of damage to otherwise non-defective building components. *See* DE 136 at 14–15. Defendant counters that much of the repair effort amounted to a *de facto* repair of the defectively installed steel. *See* DE 128 at 3; DE 135 at 2

Plaintiff brought this action against Defendant ACE for declaratory judgment seeking an adjudication of the rights, duties, and obligations under the ACE policy and for breach of contract seeking monetary damages. The cross-motions for summary judgment address three main issues: (1) whether Plaintiff has standing to bring its claims; (2) whether the damage caused by the defective work of Plaintiff's subcontractors is covered by the ACE CGL policy; and (3) whether the American Home and ACE CGL policies should prorate with the Steadfast policy based on the other insurance provisions. Additionally, there is a collateral dispute as to the admissibility of certain affidavits sworn to after the close of discovery.

## II. LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is "material" if it may determine the outcome under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party must show specific facts to support that there is a genuine dispute. *Id.* at 256, 106 S.Ct. 2505. On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. 2505. In reviewing the record evidence, the Court may not undertake the jury's function of weighing the evidence or undertaking credibility determinations. *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir.2010).

## III. STANDING

■ Defendant Ace American argues that Plaintiff lacks standing because the Steadfast policy provided coverage and made Plaintiff whole. *See* DE 128 at 17. In addition, Defendant claims that Steadfast expressly waived its contractual and equitable subrogation rights and therefore those rights could not have been assigned. *See id.* at 14–17. Plaintiff disagrees that Steadfast waived its subrogation rights. *See* DE 136 at 4. In addition, Plaintiff contends that it has suffered direct pecuniary damages for which it has yet to be made whole. *See id.* Specifically, Plaintiff maintains that the Steadfast policy required it to pay the first $950,000 in damages, that it has not yet been reimbursed by Steadfast for $1,721,500.79 in damages, that the unnecessary exhaustion of the Steadfast policy has harmed its risk management portfolio,[2] and that it is contractually obligated to pursue recovery as a condition to receiving further payments from

---

**2.** The Steadfast policy's $25 million limit applies not just to the 900 Biscayne Bay Condominium but in the aggregate to all covered projects. *See* DE 131 at 5; DE 131–2 at 105, 110–11, 115.

Steadfast. *See id.* at 12–13. In sum, Plaintiff contends that it has standing to bring these claims because of ongoing harm to independent, legally protected interests.

The Court finds that Plaintiff has standing to bring these claims. Plaintiff has demonstrated invasion of its legally protected interest in the Steadfast policy. *See Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.,* 425 F.3d 1308, 1311 (11th Cir. 2005). It is undisputed that, pursuant to the terms of the Steadfast policy, Plaintiff has the contractual right to receive coverage. Plaintiff's right to receive coverage is now nearly exhausted, Plaintiff has suffered a concrete and particularized harm. Furthermore, Plaintiff has shown a causal connection between Defendant's refusal to provide coverage and the depletion of the Steadfast policy. Finally, it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision because Plaintiff is contractually required to pursue recovery and repay Steadfast with any funds that it recovers, reducing the amount for which Steadfast can seek recovery. *See* DE 131 at ¶ 75. Because the above analysis is ruling on the standing issue, it eliminates the need to address the continued legitimacy of subrogation rights.

Nonetheless, the Court notes that the language of the endorsement modifying the subrogation clause does not appear to amount to an express waiver of subrogation rights. To the contrary, the endorsement requires Plaintiff to "assist [Steadfast], upon reasonable request, in the enforcement of any right against any person or organization which may be liable to [Plaintiff] because of Loss to which this insurance applies, including but not limited to filing any claims and enforcing any liens or security interest against a Subcontractor or its property." DE 131–2 at 107. The endorsement goes on to detail the process by which recovered funds are to be distributed back to Steadfast. *See id.* at 108. In short, the plain language of the endorsement entitles Steadfast to the recovery of funds owed by responsible third parties to its insured in order to offset its payments thereto—the exact circumstance that subrogation contemplates. The only noteworthy distinction is that the contractual duty to pursue recovery falls upon the insured.

## IV. COVERAGE

 Defendant argues that the repairs to the building are not covered by the ACE policy because the repairs only remedied the subcontractors' defective work, not "property damage" as defined in the ACE policy. This Court ruled on a strikingly similar argument in its February 25, 2015 Order Denying Defendant's Motion for Summary Judgment. DE 104 at 5. However, at the May 28, 2015 Calendar Call this Court permitted the parties to "raise any issue . . . as if it were renewed—as if it were a motion for summary judgment." DE 132 at 38. Therefore, the Court considers the arguments *de novo.*

In order to understand the scope of coverage under the ACE policy, it must be read together with the American Home policy, which the ACE policy incorporates by reference. *See* DE 131–2 at 71. The American Home policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the] insurance applies." DE 131–2 at 13. The American Home policy

defines "property damage" as "all physical injury to tangible property, including all resulting loss of use of that property" and includes "[l]oss of use of tangible property that is not physically injured." *Id.* at 27. The American Home policy excludes from coverage[3] " '[p]roperty damage to 'your work' arising out of it or any part of it and included in the products-completed operations hazard." *Id.* at 17. This exclusion is known as the "your work" exclusion. However, the "your work" exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." *Id.* Thus, the ACE Policy provides coverage for damage to the completed project caused by a subcontractor's negligent work, but does not provide coverage for the repair of the defective subcontractor work itself. There is no dispute that the subcontractors' defective work was an "occurrence" under the Policy; the question is whether it caused covered "property damage."

The Florida Supreme Court's holding in *U.S. Fire Insurance Co. v. J.S.U.B., Inc.*, 979 So.2d 871 (Fla.2007) is controlling because it discusses a substantively identical insurance policy. The issue in *J.S.U.B.* was whether a standard form CGL policy with products completed operations hazard coverage issued to a general contractor provided coverage for claims against the contractor for damage to the completed project caused by a subcontractor's defective work. *See id.* at 874–75. It was held that defective work performed by a subcontractor that caused damage to the completed project and was neither expected nor intended from the standpoint of the contractor could constitute "property damage" caused by an "occurrence." *See id.* at 875.

Defendant attempts to transform the language of *J.S.U.B.* to support the argument that the repairs here were mostly of defective work, i.e. *de facto* repairs of the improperly installed steel foundation. DE 128 at 18, 22. It is true that if there is no damage beyond faulty workmanship or defective work, there is no resulting "property damage." *See Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294, 1306 (11th Cir.2012). However, if the defective work causes damage to otherwise non-defective completed product, i.e. if the inadequate subcontractor work caused cracking in the stucco, collapse of the penthouse enclosure, and cracking in the critical concrete structural elements, Defendant is entitled to coverage for the repair of that non-defective work.[4] *See id.* Thus, the subsequent question is what constituted the repair of non-defective work as opposed to the repair of defective work.

In interpreting a substantively identical insurance policy, the United States Court of Appeals for the Eleventh Circuit held that the complete replacement of defective

---

**3.** Exclusion j(6) and k, cited by way of cursory reference by Defendant, are inapplicable. All of the damages occurred within the "products-completed operations hazard" so exclusion j(6) does not bar coverage. *See US. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 887 (Fla.2007). Exclusion k does not bar coverage because all of the damages occurred to real property in the form of the Project. Moreover, Defendant fails to meet its burden of proving

exclusion from coverage because the reference to Exclusion j(6) and k is without accompanying legal argument. See *Mich. Millers' Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 925 (11th Cir.1998).

**4.** Defendant concedes that the cracked stucco and emergency netting constituted covered damage to other property. *See* DE 128 at 27, 30.

subcontractor work may be covered when necessary to effectively repair ongoing damage to otherwise non-defective work. *See Carithers v. Mid–Continent Casualty Company*, 782 F.3d 1240 (11th Cir.2015). There, a balcony that had been defectively installed by a subcontractor was causing runoff and resulting water damage to an adjacent garage. *See id.* at 3244, 1251. Although the balcony itself did not constitute independent "property damage" under the terms of the policy, its replacement was necessary in order to effectively repair the garage.[5] *See id* at 1251. "In other words, to repair the garage, it was necessary to completely replace the defectively constructed balcony." Memorandum and Order, *Carithers v. Mid–Continent Casualty Company*, No. 12–00890, 2014 WL 11332308 (M.D.Fla. Mar. 11, 2014), DE 126 at 8. Similarly here, in order to adequately repair the non-defective project components, the building had to be stabilized. Even if the predominant objective of the repair effort was to fix the instability caused by the defective subcontractor work, it is undisputed that the same effort was required to put an end to ongoing damage to otherwise non-defective property, e.g. damage to stucco, penthouse enclosure, and critical concrete structural elements. *See* DE 128 at 2–3; DE 131 at ¶¶ 52–63. Thus, the ACE policy provides for complete indemnification.[6]

## V. PRORATION

■ The Steadfast policy and the American Home and ACE policies contain "Other Insurance" provisions providing that the insurance is excess over any other insurance available. *See* DE 123 at 23, 102. "Other Insurance" provisions such as these apply when two or more insurance policies are on the same subject matter, risk, and interest. *See Citizens Prop. Ins. Corp. v. Ashe*, 50 So.3d 645, 650 (Fla. 1st DCA. 2010). In this case, it is undisputed that the American Home and ACE policies insured the Project Owner, Plaintiff, and most subcontractors against the risk of claims of property damage and bodily injury. *See* DE 131 at 18. In contrast, the Steadfast policy insured Plaintiff against the risk of subcontractor contractual default. *See id.* at 24–26. The policies thus insure against different risks.[7] *See e.g. Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294, 1303 (11th Cir.2012).

In addition, Courts disregard "Other Insurance" provisions where, as here, there is a contractual right of indemnification

---

**5.** ACE misrepresents the facts of *Carithers* when it asserts that the defective work was removed simply to access covered property damage. *See* DE 140 at 11–12. To the contrary, the District Court held that faulty workmanship that causes damage to non-defective property and that must be repaired in order to repair the damage being caused can constitute covered property damage under the policy. *See* Memorandum and Order, *Carithers v. Mid–Continent Casualty Company*, No. 12–00890, 2014 WL 11332308 (M.D.Fla. Mar. 11, 2014), DE 126 at 8.

**6.** Citing *J.S.U.B.*, Defendant argues somewhat incidentally that mitigation of damages is not covered Nowhere in *J.S.U.B.* is mitigation of damages mentioned. On the contrary,

*J.S.U.B.* stands for the proposition that claims for repairing structural damage caused by the defective work of subcontractors may be covered. As a natural corollary, coverage may exist for costs to repair defective work in order to prevent further structural damage and covered loss. *See, e.g., Carithers v. Mid–Continent Cas. Co.*, 782 F.3d 1240, 1251 (11th Cir.2015).

**7.** Plaintiff's claim is that the two policies were triggered by separate occurrences—the ACE policy triggered by a claim of property damage; the Steadfast policy triggered by subsequent subcontractor default.

between the parties insured by the relevant policies. *St. Paul Fire & Marine Ins. Co. v. Lexington Ins. Co.*, No. 05–80230–CIV, 2006 WL 1295408, at *4 (S.D.Fla. Apr. 4, 2006). Here, AWS contracted to indemnify Plaintiff for damages resulting from its work and Defendant insured AWS for claims of property damage. DE 131–1 at 90. Therefore, Defendant cannot utilize the "Other Insurance" provision to shift the loss.

Finally, Defendant insured AWS, the actively negligent subcontractor, whereas Steadfast insured Plaintiff, the vicariously liable general contractor. Provided that ACE has a duty to offer coverage, Steadfast's policy should not have been reached first. *See Allstate Ins. Co. v. Executive Car & Truck Leasing, Inc.*, 494 So.2d 487, 488–89 (Fla.1986); *Allstate Ins. Co. v. Fowler*, 480 So.2d 1287, 1290 (Fla.1985).

## VI. AFFIDAVITS

■ The Court has discretion to strike affidavits entered at summary judgment if they provide information that would otherwise be inadmissible at trial due to Rule 37(c)(1) sanctions. *See* Fed.R.Civ.P. 37(c)(1); *Burden v. City of Opa Locka*, No. 11–22018–CIV, 2012 WL 4764592, at *7 (S.D.Fla. Oct. 7, 2012) (citing *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004)). Defendant argues that certain affidavits sworn to after the close of discovery should be stricken as untimely.[8] DE 135 at 3 n.3. However, Defendant fails to specifically identify any witness or infor-

mation improperly disclosed pursuant to Rule 26.[9] *See* Fed.R.Civ.P. 26; *Burden*, 2012 WL 4764592, at *7; *Rollins v. Alabama Cmty. Coll.*, No. 2:09–636–CIV, 2011 WL 1897415, at *3 (M.D.Ala. May 18, 2011). In addition, Defendant indicates only four affidavits to strike—the affidavits of Plaintiff's expert, Alexandre Hockman, P.E., Plaintiff's President, Gary Glenwenckel, StructureTone's John Marsicano, as well as Steadfast Insurance Company's Andrew Thompson. The first three affiants were listed in Plaintiff's Trial Witness List as witnesses whom Plaintiff expects to present at trial. *See* DE 110–3 at 1–2. The fourth affiant, Andrew Thompson, was listed as a witness whom Plaintiff may call if need arises. *See id.* Plaintiff has not shown that these affidavits provide information that would otherwise be inadmissible at trial. That said, Defendant accurately characterizes Mr. Thompson's affidavit as only offering a legal interpretation of the plain language of the underlying insurance contract, an analysis that remains within the exclusive purview of this court. Accordingly, Mr. Thompson's affidavit (DE 131–8) is due to be stricken.

## VII. DAMAGES

■ It is undisputed that, in total, Plaintiff incurred direct losses of $25,121,474.84 in connection with the remediation effort. *See* DE 131 at 100. After taking into account compensation from the American Home policy and relat-

---

**8.** At the May 28, 2015 Calendar Call, the Court explained that "all the discovery is done ... pleading practice is cut off, discovery's cut off, and we now are at a pleading stage...." DE 132 at 38.

**9.** In a separate pleading, (DE 140), Defendant complains generally about the affidavits of

Gary Glenwenckel, Thomas Miller and David DeSoto, mentioning that the latter two were not disclosed during discovery and that the first offered a purely legal interpretation. Defendant does not ask the Court to strike these affidavits and the Court declines to do so *sua sponte.*

ed salvage efforts, there remains an undisputed direct loss of $23,116,798.44. *See id.* Defendant admits that the design and installation of the Panel System cost over $23 million and characterizes the report of its own expert, Jacob Zona, as confirming that the Panel System corrected the defective work of AWS and TCOE, including the missing or improperly installed anchors and rebar in the concrete masonry units CMUs and missing or improperly installed steel in the columns and beams, which Mr. Zona also admits was the primary cause of the vast majority of damage. DE 135 at 2; DE 135–1 at 3–5, 38–44.[10] In its pleadings, Defendant refers to the Panel System on several occasions as "the $25 million curtain wall repair," tacitly admitting that the roughly $23 million in damages requested by Plaintiff approximates the actual loss. DE 135 at 7, 14. In addition, Defendant's expert Jonathan Held estimated costs as follows:

1. The cost to remove and replace stucco at certain locations at the project is $1,671,157.50.

2. The cost to install netting, structural steel framing and metal panels (i.e. the curtainwall designed by KCE Engineers) is $11,039,647.00.

3. The cost to repair defective masonry is $2,616,680.00.

4. The cost to repair defective concrete is $14,721,161.00.

DE 128–12 at 1–2. Thus, Defendant's own expert estimated direct losses of $30,048,645.50, a figure well in excess of the requested relief of $23,116,798.44, the accuracy of which Plaintiff does not contest. DE 131 at ¶ 94; DE 140 at 7–8.

Plaintiff has attached a spreadsheet to account for all its costs. DE 131–3 at 104–149. Plaintiff has also attached an affidavit of John Marsicano, Director of Shared Financial Services for Structure Tone, Inc. ("Structure Tone"), an affiliate of Plaintiff. DE 131–9 at 2. In his affidavit, Mr. Marsicano attests to his responsibility for the submission of Subcontractor Default Insurance ("SDI") claims to Steadfast and for the oversight of the submission of Plaintiff's SDI claims related to damage caused by missing and improperly installed reinforcing steel at the Project, including the remediation work related to that damage. Mr. Marsicano states that Plaintiff has made 33 submissions to Steadfast, which reflect all of its costs and include both invoices and proof of payment. Mr. Marsicano alleges that total costs in connection with the remediation have amounted to $25,121,474.84 with $23,116,798.44 in covered damages remaining. *Id.* at 2, 4–6.

■ The ruling on damages is to be made on the record the parties have actually presented, not on one potentially possible. *Madeirense do Brasil S/A v. Stulman–Emrick Lumber Co.*, 147 F.2d 399, 405 (2d Cir.1945). Disposition of issues of damage at summary judgment may be made on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 623–24, 64 S.Ct. 724, 88 L.Ed. 967 (1944). Accordingly, for the reasons set forth above, Plaintiff, for itself and on behalf of Steadfast, is entitled to recover and Defendant is liable for $23,116,798.44 in damages, exclusive of interest and litigation expenses.

---

**10.** Mr. Zona concluded that "[r]epairing the [existing] damage does not correct the underlying defects" and that "[d]effective concrete and masonry construction is left in place, and the new structural steel and cladding elements functionally replace the defective concrete and masonry elements." DE 135–1 at 41–42.

## VIII. CONSEQUENTIAL DAMAGES

█ Plaintiff argues that the terms of the American Home and ACE Policies provide coverage for all damages arising from or attributable to the property damage—including consequential damages such as delay costs, overhead expenses, lost profits, diminution in value, and any other "economic" losses that flow from injury to property. DE 130 at 21 (citing *Am. Home Assurance Co. v. Libbey–Owens–Ford Co.*, 786 F.2d 22, 26–27 (1st Cir.1986)). However, under Florida law, general liability policies such as the ACE policy do not cover damages that are purely economic in nature. *Key Custom Homes, Inc. v. Mid–Continent Cas. Co.*, 450 F.Supp.2d 1311, 1317–18 (M.D.Fla.2006); *Harris Specialty Chemicals, Inc. v. U.S. Fire Ins. Co.*, No. 3:98–CV–351–J–20B, 2000 WL 34533982, at *6 (M.D.Fla. July 7, 2000); *Old Republic Ins. Co. v. W. Flagler Associates, Ltd.*, 419 So.2d 1174, 1177 (Fla. 3d DCA 1982). The argument that consequential damages are covered if they arise from or are "because of" property damage caused by defective work is made without binding legal support.

## IX. ATTORNEY'S FEES

█ In a diversity case, awards of attorney's fees are governed by applicable state law. *See Perkins State Bank v. Connolly*, 632 F.2d 1306 (5th Cir.1980); *see also Blasser Brothers, Inc. v. Northern Pan–American Line*, 628 F.2d 376 (5th Cir.1980). Because this is a diversity case arising under Florida law, Florida law determines whether attorney's fees should be awarded here. Fla.Stat.Ann. § 627.428(1), authorizes the award of attorney's fees in this insurance case. This section provides that a court shall award a reasonable sum to compensate the insured's attorney for prosecuting the suit when a judgment is entered against the insurer in favor of the insured. *Id.* Plaintiff prevailed in this action against its insurer. Therefore, Plaintiff is entitled to recover attorneys' fees and costs incurred in prosecuting its claims, with the amount to be determined at a later date.

## X. CONCLUSION

The evidence establishes that Defendant owed a duty to indemnify Plaintiff for all costs to resolve the claim against Plaintiff for repair of property damage to the Project resulting from the defective work of its subcontractors. Accordingly, after a careful review of the record and the Court otherwise being advised in the premises, it is **ORDERED, ADJUDGED and DECREED** as follows:

1. Plaintiffs Motion for Summary Judgment (**DE 128**) be, and the same is, hereby **GRANTED IN PART and DENIED IN PART.** Specifically, insofar as the motion seeks summary judgment in Plaintiff's favor on Count I for Declaratory Judgment and Counts II and III for Breach of Contract the motion is **GRANTED;** insofar as the motion seeks attorney's fees and costs pursuant to Fla.Stat.Ann. § 627.428 the motion is **GRANTED;** but insofar as the motion seeks consequential damages the motion is **DENIED.**

2. Plaintiff **SHALL** file a Motion for Pre–Judgment Interest, addressing the amount of interest to which Plaintiff is entitled within **twenty (20) days** of this Order.

3. Defendant's Motion for Summary Judgment and Incorporated Memorandum of law (**DE 130**) be, and the same is, hereby **DENIED.**

4. The affidavit of Andrew Thompson (**DE 131–8**) is **STRICKEN with prejudice.**

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 29th day of October, 2015.